## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANNIE WILLIAMS,

        Plaintiff,

vs.                            Civil No.   13-cv-492-DRH-CJP

COMMISSIONER of SOCIAL
SECURITY,

        Defendant.

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Annie Williams is before the Court, represented by counsel, seeking review of the final decision of the Commissioner of Social Security denying her Supplemental Security Income (SSI).

### Procedural History

Ms. Williams applied for benefits in April, 2009, alleging disability beginning on March 19, 2009. (Tr. 16). The application was denied initially and on reconsideration. After holding a hearing, ALJ Eva M. Riley denied the application for benefits in a decision dated November 22, 2011. (Tr. 16-23). Plaintiff's request for review was denied by the Appeals Council, and the decision of the ALJ became the final agency decision. (Tr. 1).

Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issue Raised by Plaintiff

Plaintiff raises only one issue:

        1.    The ALJ erred in not finding that plaintiff's degenerative disc disease at L4-5 and her COPD combined to meet or equal a listed impairment.

## Applicable Legal Standards

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes.[1]  For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.   42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).

"Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit.   20 C.F.R. §§

---

[1] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.   The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416.   For all intents and purposes relevant to this case, the DIB and SSI statutes are identical.   Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations.   Most citations herein are to the DIB regulations out of convenience.

404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.   The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.   *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992); see also, 20 C.F.R. §§ 404.1520(b-f).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.    The scope of review is limited.   "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).   Thus, this Court must determine not whether Ms. Williams was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.   See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).

This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.   *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).   However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.   See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## **The Decision of the ALJ**

ALJ Riley followed the five-step analytical framework described above.

She determined that Ms. Williams had not been engaged in substantial gainful activity since the alleged onset date, and that she had severe impairments of degenerative joint disease of the lumbar spine and left knee, chronic obstructive pulmonary disease and migraine headaches.   ALJ Riley determined that plaintiff's impairments do not meet or equal a listed impairment.

The ALJ found that Ms. Williams had the residual functional capacity to perform work at the medium exertional level, with no concentrated exposure to pulmonary irritants.   Noting that the nonexertional limitation as to pulmonary irritants has very little effect on the unskilled medium exertion occupational job base, the ALJ applied the Grids and found that plaintiff was not disabled.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.   The following summary of the record is directed to the point raised by plaintiff.

**1.     Agency Forms**

Ms. Williams was born in 1965 and was 43 years old on the alleged onset date.  (Tr. 127).

In a Disability Report, plaintiff said she was unable to work because of pain in her left knee, right thumb and back.   She said she was unable to sit, stand or walk for any length of time.   (Tr. 131).

She graduated from high school and was not in special education classes.

(Tr. 135).   Her work history was minimal.   She had no earnings in the years 2001, 2003, and 2005 through 2010.   She earned less than $100.00 a year in 1999, 2000, 2002 and 2004.   (Tr. 112).

## 2.   Evidentiary Hearing

Plaintiff was not represented by an attorney at the hearing on September 28, 2011.   The ALJ informed her that she had a right to legal representation and offered to continue the hearing so that plaintiff could get an attorney.   Plaintiff elected to proceed pro se.   (Tr. 30-33). Plaintiff is represented by counsel in this Court.

Plaintiff was married, and had four children ranging in age from 22 to 8 years old.   (Tr. 36).   She also had two other children who lived with their father.   (Tr. 42).   She testified that she last worked about two years before the hearing, doing home health care for the elderly.   (Tr. 38).

Ms. Williams testified that she could not work because of pain in her back and knee.   (Tr. 41).   She took arthritis medication that had been prescribed by an emergency room doctor.   (Tr. 39).

## 3.   Medical Records

Plaintiff saw Dr. William Andrisse at Kenneth Hall Regional Hospital on April 9, 2009, for back pain.   X-rays of her lumbar spine were "unremarkable."   Chest x-rays showed COPD.   (Tr. 197-199).

Dr. Vittall Chapa performed a consultative physical examination in August,

2009.   She walked normally without an assistive device.   Neurological examination was normal.   She had no muscle atrophy or weakness.   Sensation was intact.   She no paraspinal muscle spasm.   Straight leg raising was negative. Lumbosacral spine flexion was normal.   She had some swelling of the left knee, but the joint was stable.   Her lungs were clear.   (Tr. 245-248).

In September, 2009, pulmonary function testing was unremarkable.   (Tr. 250-271).

Dr. Andrisse saw plaintiff for her back in November, 2009.   He ordered an MRI.   (Tr. 295).   An MRI of the lumbar spine done in December, 2009, showed a herniated disc at L4-5 with compromise of the exiting nerve root.   There was no disc disease at any other level.   (Tr. 300-301).

A pain management specialist at Memorial Hospital in Belleville, Illinois, gave plaintiff two epidural steroid injections at L4-5 in February, 2010.   On the first visit, this doctor noted that x-rays showed disc disease with disc space narrowing at L4-5.   Straight leg raising was positive on the right.   Her lumbar spine was tender and range of motion was decreased.   Sensation, strength, deep tendon reflexes and gait were normal, (Tr. 324-325).   On the second visit, February 19, 2010, the pain management specialist recorded diagnoses of lumbar degenerative disc disease with disc bulging or disc space narrowing at L4-5, chronic lower back pain and left-sided radiculopathy.   He noted that plaintiff reported "a significant decrease in pain shortly following the procedure."   (Tr. 327).

Dr. Adrian Feinerman examined plaintiff on February 23, 2010.   He found
that she had a normal gait and was able to toe walk, heel walk, squat and arise, hop
and get on and off the examining table with no difficulty.   Strength, sensation and
deep tendon reflexes were normal.   She had no crepitation in her knees.   Her
lungs were clear.   She had some limitation of the range of motion of her lumbar
spine.   Straight leg raising was negative in both the sitting and supine positions.
(Tr. 313-322).

**4.    RFC Assessment**

State agency consultant Julio Pardo, M.D., opined that plaintiff was able to
perform work at the medium exertional level with no limitations.   (Tr. 286-293).

**5.    Records Not Submitted to the ALJ**

The medical records at Tr. 335-365 were not before the ALJ.   They were
submitted to the Appeals Council in support of plaintiff's request for review.   See,
Tr. 6.   The Court cannot consider these records in determining whether the ALJ's
decision was supported by substantial evidence.   Records "submitted for the first
time to the Appeals Council, though technically a part of the administrative record,
cannot be used as a basis for a finding of reversible error."   *Luna v. Shalala*, 22
F3d 687, 689 (7th Cir. 1994).   See also, *Getch v. Astrue,* 539 F.3d 473, 484 (7th Cir.
2008); *Rice v. Barnhart*, 384 F.3d 363, 366, n. 2 (7th Cir. 2004).

## Analysis

The Court ordered the parties to file briefs setting forth (1) a concise, yet

comprehensive, statement of the relevant facts, with citations to the record; (2) a statement of all issues to be decided by the Court; and (3) a discussion of the law applicable to each issue, together with the appropriate citations of authority.   See, Doc. 12.

Plaintiff's brief, Doc. 13, is not even two pages long.   It is devoid of a statement of facts, citations to the record and a meaningful discussion of the law applicable to the one issue raised.

Plaintiff suggests that the ALJ should have found that her degenerative disc disease and COPD in combination meet or medically equal the severity of a listed impairment.   Her brief does not specify which Listing she believes she meets.   Nor does she specify what evidence supports her argument, other than to cite generally to Exhibit 16F, the records of the pain management specialist.

A finding that a claimant's condition meets or equals a listed impairment is a finding that the claimant is presumptively disabled.   In order to be found presumptively disabled, the claimant must meet *all* of the criteria in the listing; an impairment "cannot meet the criteria of a listing based only on a diagnosis."   20 C.F.R. §404.1525(d).   The claimant bears the burden of proving that she meets or equals a listed impairment.   *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999).

As plaintiff's main complaint is low back pain, the most relevant Listing is 1.04A.   The requirements of Listing 1.04A are:

> Disorders of the spine (e.g., herniated nucleus pulposus, ... degenerative disc disease ...vertebral fracture) resulting in compromise of a nerve root ... or the

Page **9** of **11**

spinal cord.

With

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Despite plaintiff's failure to make a concrete argument, the Court has undertaken a review of the record and concludes that the evidence falls far short of establishing that plaintiff met all of the requirements of Listing 1.04A.  There was no evidence of a neuro-anatomic distribution of pain.  Listing 1.04A specifically requires evidence of positive straight-leg raising test in *both* the sitting and supine positions, which is absent here.  Further, there is no evidence of motor loss, muscle atrophy, sensory loss or reflex loss.

The ALJ was presented with a record that included essentially normal findings by two different examining doctors, unremarkable pulmonary function studies, and records of minimal, conservative medical treatment.  Further, Ms. Williams' work history was sporadic and the record suggested that she functioned well enough to take care of her home and her children.   Her claim of disabling pain was supported only by her own testimony, which the ALJ found to be less than credible.   Notably, plaintiff has not challenged the ALJ's credibility findings or the ALJ's weighing of the medical evidence that was before her.

## **Conclusion**

Page **10** of **11**

After a thorough review of the record, the Court finds that the ALJ's decision was supported by substantial evidence and that she committed no legal errors.

The Commissioner's final decision denying Annie Williams' application for social security disability benefits is **AFFIRMED.**

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

Signed this 8th day of January, 2014.

David R. Herndon
2014.01.08
05:52:43 -06'00'

**Chief Judge**
**U.S. District Court**